**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | : | |
|---|---|---|
| **DUAN OU and LIAN RONG YANG** | : | **CIVIL ACTION** |
| *Parents and Guardians on behalf of* | : | |
| **A.O., a minor,** | : | |
| Plaintiffs | : | |
| **v.** | : | |
| | : | **NO.  2:24-CV-5954** |
| **FOUNDATIONS BEHAVIORAL HEALTH,** | : | |
| Defendant | : | |
| | : | |

## MEMORANDUM OPINION

I.    **Introduction**

Before the Court is a Motion to Dismiss (the "Motion") filed by Defendant Foundations Behavioral Health ("Defendant"). In it, Defendant argues that Plaintiffs Dr. Duan Ou ("Dr. Ou"), Lian Rong Yang,[1] and A.O. ("Plaintiffs") have failed to state a claim upon which relief can be granted. Plaintiffs responded in opposition. Upon review, this Court is constrained to agree that, on the face of the Complaint, the claims made individually by the Parents are time-barred, and therefore dismisses those claims. In all other respects, the Motion is denied.[2]

---

[1]    Dr. Ou and Lian Rong Yang will together be referred to as the "Parents." A.O. is their son, who was a minor at the time of the events which gave rise to these claims

[2]    This Court will not write extensively regarding the surviving claims brought individually by A.O. for gross negligence, assault, and battery, as that analysis is relatively uncomplicated. The Court concludes that when all reasonable inferences are granted to A.O. the factual allegations of the Complaint are sufficient to state a claim for each of A.O.'s individual claims. If A.O. was indeed struck the way he alleges, such action could be willful misconduct by Defendant (if part of an explicit or tacitly-approved practice) or gross negligence (in failing to adequately supervise a violent employee). For that same reason, punitive damages also cannot be eliminated at this stage. Defendant's argument that the assault and battery claims must be dismissed because they are contradicted by a document which was not attached to the Complaint and is not undisputedly authentic cannot be credited. Further, even if the police report *was* properly before the Court, in a motion to dismiss, this Court cannot credit a third party police officer's own investigative

II.    **Factual Allegations**

Plaintiff A.O., was "born severely autistic and was later determined to be of very low intelligence." (Dkt. #10 at ¶ 2). In 2016, around the time he turned 11, as a result of his disruptive and sometimes aggressive behavior, A.O. was admitted to Defendant's facility on medical advice. (*Id.* at ¶ 4). Plaintiffs allege that during the 42 hours he was in Defendant's care, A.O. suffered new physical injuries not present when he first went into Defendant's care. (*Id.* at ¶ 7). Specifically, Plaintiffs allege that A.O. suffered from a black eye, swollen forehead, and concussion, *inter alia*. (*Id.* at ¶¶ 67, 80). A.O. told his Parents these injuries were inflicted by an employee of Defendant named "Frank." (*Id.* at ¶ 69). In the alternative, Plaintiffs assert that if the injury was not intentionally inflicted by an employee of Defendant, that Defendant is still responsible for what would otherwise be A.O.'s self-inflicted harm for failing to adequately supervise A.O. while in their care. (*Id.* at ¶ 181-82). Plaintiffs allege that after A.O.'s stay with Defendant, A.O. was diagnosed with a concussion and Post-Traumatic Stress Disorder. (*Id.* at ¶ 10). After that, due to his increasing behavioral concerns, A.O was enrolled in a specialized school. (*Id.* at ¶ 11).

Plaintiffs allege that it eventually became apparent that the concussion suffered while A.O. was in Defendant's care caused "a latent cerebral condition that risked a reoccurrence of A.O.'s previous violent and disruptive behavior." (*Id.* at ¶ 12). Plaintiffs further allege that this latent condition presented as active, six years later, in January 2022 after A.O. was involved in a car accident. (*Id.* at ¶ 13). A.O. was examined by Dr. Qinyue Liu two weeks after the accident and noted that Plaintiff's father, Dr. Ou, believed the car accident led to a significant change in A.O.'s

---

determination over the well-pleaded allegations of the Complaint at bar. Finally, with respect to Plaintiffs demand for an award of attorney's fees, this Court recognizes that an award of attorney's fees would be unusual in a case like this, but sees no reason to resolve a potential issue of discretion at this time, on this record.

behavior. (*Id.* at ¶ 132). Shortly thereafter, A.O. assaulted members of his school's staff twice within two weeks. (*Id.* at ¶ 135). A.O. found a new school to attend. (*Id.* at ¶ 142).

In early 2022, the Parents asked counsel for Plaintiffs to explore whether the Parents might have a cause of action against Defendant. (*Id.* at ¶ 147). By July of 2023, Plaintiffs' counsel assembled a "dossier" explaining A.O.'s conduct during the periods before and after admission to Defendant, as well as after the car accident. (*Id.* at ¶ 150). Plaintiffs explain this significant delay by alleging that "[m]uch of [Plaintiffs' counsel's] activity in 2022 and into 2023 was devoted to pursuing settlements with the two (2) insurance companies[]" involved directly in the car accident. (*Id.* at ¶ 148). Plaintiffs' counsel then located an expert named Dr. Beatrice Engstrand who examined the dossier assembled by Plaintiffs' counsel and concluded the root cause of A.O.'s changed behavior was the injury sustained while in Defendant's care. (*Id.* at ¶¶ 151-54). Purportedly based on this report, the Parents allegedly "discovered" they had a cause of action against Defendant, and suit was eventually filed on November 6, 2024. (*Id.* at ¶¶ 155-56).

## III.    Legal Standards

Federal Rule of Civil Procedure 12(b)(6) permits this Court to dismiss a count of a complaint if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (internal quotation marks and citation omitted). The Court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). But the Court cannot draw any *unreasonable* or unsupported inferences. *See, e.g.*: *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.,* 450 F.3d 130, 133 (3d Cir. 2006) ("[W]e

need not credit the non-movant's conclusions of law or unreasonable factual inferences."); *Little v. Chambersburg Hosp.*, No. 1:11-CV-01804, 2012 WL 1048820, at *4 (M.D. Pa. Mar. 28, 2012) ("The deferential standard of review applicable to a motion to dismiss does not go so far as to require this Court to accept unsupported inferences drawn by the Plaintiff.").

A formulaic recitation of the elements of a claim will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a pleader is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (internal quotation marks and citation omitted). Conclusory statements and unfounded speculation are insufficient to state a claim. *Parker v. Pennstar Bank, NBT,* 436 F. App'x 124, 127 (3d Cir. 2011). While statute of limitations defenses often will require fact finding at summary judgment or trial, a Court can dismiss a claim on untimeliness at a motion to dismiss where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002).

In Pennsylvania, the statute of limitations for actions sounding in negligence is two years. §42 Pa.C.S. § 5524(7); *Workman v. Nemours Found.*, 278 F. App'x 124, 125 (3d Cir. 2008) affirming dismissal based upon Pennsylvania's two-year statute of limitations). That includes those which are purportedly based upon gross negligence. *See, e.g.*: *Pompa v. St. Luke's Hosp.*, No. CV 3:21-1378, 2023 WL 2332250, at *3 (M.D. Pa. Mar. 2, 2023; *Burch v. Pennsylvania*, No. CIV.A. 09-64 ERIE, 2010 WL 1133336, at *4 (W.D. Pa. Mar. 19, 2010). The limitations period on a negligence claim "begins to run as soon as the right to institute and maintain a suit arises [.]" *Montanya v. McGonegal*, 757 A.2d 947, 950 (Pa. Super. 2000) (internal citation omitted).

Pennsylvania applies the discovery rule, which tolls an applicable statute of limitations

where a party is unable "despite the exercise of reasonable diligence, to know that he has been injured and by what cause." *Drelles v. Mfr. Life Ins. Co.*, 881 A.2d 822, 831 (Pa. Super. 2005). "[L]ack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." *Lang v. Cont'l Assurance Co.*, 54 F. App'x 72, 74 (3d Cir. 2002) (internal quotations omitted). Put another way: ignorance that the law might provide you a remedy does not implicate the discovery rule or other forms of equitable tolling. *See, e.g.*: *Davenport v. Graduate Hosp.*, No. CV 17-2397, 2017 WL 3097618, at *3 (E.D. Pa. July 19, 2017); *Woods v. Gilmore,* No. CV 16-6365, 2017 WL 2720226, at *1–2 (E.D. Pa. June 23, 2017).

The discovery rule, as applied in various jurisdictions, generally comes in one of two forms. Some jurisdictions have a broader rule, which delays accrual of a cause of action until the plaintiff has actual or constructive knowledge of their cause of action. Others have the narrower rule, which ties commencement of a limitations period to actual or constructive knowledge of "some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause." *Wilson v. El-Daief*, 964 A.2d 354, 364 (Pa. 2009) (cleaned up). Pennsylvania has adopted the more limited and narrow understanding of the discovery rule. *Id.*

## IV.    Analysis

### a.  The Statute of Limitations Began to Run in 2016 on Claims by the Parents, Individually.

In the first instance, this Court finds that the statute of limitations on a cause of action brought individually by the Parents began to run when A.O.'s behavior worsened in 2016. By then, the Parents were aware that their son was injured either by someone working for Defendant or at least within the Defendant's care, and indeed pursued an investigation of the incident. Further, the Parents immediately sought medical care and opinions regarding A.O. By no later than "the early

months of 2016," the Parents were already on notice of A.O.'s "worsened" behavior having grown "more aggressive and unmanageable" than before his time being treated by Defendant. (Dkt. #10 at ¶ 94). At that point, the Parents had actual knowledge of "significant harm and of a factual cause linked to another's conduct. . . ." *Wilson*, 964 A.2d at 364. Specifically, they had actual knowledge that A.O. had been injured physically, was manifesting increased behavioral concerns, and that there was an alleged factual basis for blaming it on Defendant by way of either Defendant's employee's actions or negligent supervision of A.O. The Parents' causes of action began to accrue by early 2016, and therefore are time barred.

Although it is not entirely clear from the Complaint, the Parents might argue that the 2016 date is inapplicable because the real injury complained about here isn't the one the Complaint discusses extensively between 2016 and 2022, but the one that was also caused by the car accident in 2022. This Court is not at all convinced that the vehicle crash unrelated to Defendant would somehow reignite the Parents' limitation period for a tort that occurred many years prior. Under Pennsylvania law, the statute of limitations begins to run when a plaintiff knows they are injured; not when they appreciate the full extent of the injury. *See*: *Wilson*, 964 A.2d at 364 (Pa. 2009) (noting that a limitations period begins accruing even "without the necessity of notice of the full extent of the injury..."); *see also*: *Spade v. Star Bank*, No. CIV.A. 01-3349, 2002 WL 31492258, at *10 (E.D. Pa. Nov. 6, 2002); *Home Indem. Co. v. Alexander & Alexander, Inc.,* Civ. A. No. 89–7715, 1990 WL 181467, at *4 (E.D.Pa. Nov. 20, 1990) (stating that applying the discovery rule to delay the running of the statute of limitations until the full extent of the injury is known "would be to bend the discovery rule completely out of its original design"). But as will be explained *infra*, even if this Court were to generously find the limitations period began running after the car accident, the claims by the Parents would *still* be untimely.

      **b.  Even if this Court Were to Accept a Theory that the Later Car Accident Somehow Revived the Parents' Limitation Period, the Claims Are Still Untimely.**

Even if the Court were to accept the contention that the real injury involved in this Complaint occurred on January 22, 2022, the Parents' claims fare no better. If the Court were to stretch the accrual date of the Parents' cause of action as far as it could, perhaps it arguably accrued when the Parents first recognized that the car accident exacerbated the condition allegedly caused by Defendant's care six year prior. But by February 3, 2022, the Complaint makes clear that Dr. Duan Ou was actually aware of sufficient facts that the accident had exacerbated that condition. (Dkt. #10 at ¶ 131-133).  The Complaint earlier alleges (as it must) that A.O.'s general condition of aggressive behavior found its genesis in the incident that occurred while A.O. was in Defendant's care. ( *See, e.g. id.* at ¶¶ 12, 96-97). Put together, these allegations combine to plead that by February 3, 2022, the Parents were aware that the condition they already believe was initially caused by Defendant had been exacerbated and worsened by the car accident. The Complaint was filed in November of 2024, almost two years and nine months after that absolute best-case-scenario February 3, 2022 date. The Parents' individual claims are, therefore, untimely and must be dismissed.

In their Brief in Opposition to the Motion (Dkt. #17-1, the "Opposition"), Plaintiffs argue that the purpose of this instant amended complaint was to insert additional facts which would allow this claim to go forward despite the foregoing timeliness issues. The Opposition asserts that the bases on which this Court should call the Parents' claims timely is that the Parents first became aware they had a valid cause of action in August, 2023. (Opposition at 17). In order to justify this timeframe, the Opposition asserts that the Parents had to undertake "two time-consuming projects-pursuing claims against two different insurance companies related to the car accident, and finding

a new school that would accept A.O. . . ." (*Id.* at 18). The Opposition alleges the Parents' due diligence culminated when their expert concluded that the root cause of A.O.'s current trauma was the treatment by Defendant, and not merely the car accident. (*Id.*). That's when the Parents "under[stood] they had a valid cause of action against [Defendant]." (*Id.*). Therefore, the Opposition asserts, that is when their statute of limitations clock began to run.

But this argument flies in the face of well-established Pennsylvania case law. Just because the Parents did not yet have an expert report saying that Defendant was to blame does not mean they did not have enough facts to put them on notice of "significant harm and of a factual cause linked to another's conduct. . . ." *Wilson*, 964 A.2d at 364. And the Opposition's argument is in blatant contradiction of the Complaint itself, which alleges that A.O.'s father already had made that connection of harm and factual cause when he spoke with Dr. Matthews and said the accident led to a worsening of A.O.'s behavior, behavior for which the Complaint pleads the Parents blamed on Defendants many years prior.  (Dkt. #10 at ¶¶ 97-99, 132).

This Court is incredibly sympathetic to the fact that the Parents had other, more important, priorities at such a traumatic time. The fact that the Parents did not have the bandwidth to realize they had a valid claim cannot win the day here.  Parents' competing priorities are exactly why Plaintiffs engaged counsel- the very counsel representing them now. If counsel could not handle the competing priorities of analyzing the Parents' potential claims while litigating two motor vehicle accident lawsuits, they should have brought in more help at their firm to assist in assessing the Parents' claims. There is no explanation at all for why it took a year and a half from when counsel was first engaged to investigate the Parents' potential claim to the assembling of the so-called "dossier" for Plaintiffs' expert. This Court finds the delay here unreasonable.

Ultimately, the point is moot, as the claims accrued back in 2016 and were untimely

whether or not they were filed within two years of the car accident. But if the Court were to accept that the car accident date was the correct accrual date, the process with counsel *still* played out too slowly to be actionable. Under any defensible accrual date, the Parents claims are untimely, and no form of the discovery rule or equitable tolling permissible under Pennsylvania law can save those claims.

## V.    Prejudice

The Third Circuit embraces a liberal policy of permitting parties to re-plead, rather than dismissing with prejudice. But dismissal with prejudice is appropriate where further attempts to plead would be futile. *Lontex Corp. v. Nike, Inc*., 384 F. Supp. 3d 546, 560 (E.D. Pa. 2019). Here, the untimeliness flaw identified in the instant motion to dismiss was present in Plaintiffs' original Complaint. (See generally: Dkt. #1). Defendant moved to dismiss on, *inter alia*, untimeliness grounds. (Dkt. #8). Plaintiffs amended their Complaint to the instant, effective First Amended Complaint. (Dkt. #10). Plaintiffs did so specifically to "rebut incorrect facts" regarding whether the discovery rule should apply. (Opposition at 17). That is to say, this Complaint encompasses the best effort Plaintiffs could put together, armed with the knowledge that they might have a statute of limitations problem.

Defendants filed the instant Motion shortly after the Amended Complaint was filed.  In their Opposition, Plaintiffs specifically acknowledge that Defendant's second motion to dismiss was "wholly duplicative of its Motion dismiss the original Complaint." (Opposition at 5).[3] It seems both parties recognize that this is the second time Defendant filed a nearly-identical brief with

---

[3]    Plaintiffs seem to frame that observation as an argument in their favor. That argument is not at all persuasive. It is not uncommon at all that a motion to dismiss an amended complaint might be very similar to an original complaint, especially where, as here, the amended complaint did not add additional material allegations which would change the Court's analysis.

respect to how the statute of limitations applies to claims made by the Parents, individually. This Court agrees that the Initial and First Amended Complaint raised nearly-identical statute of limitations issues, because the Amended Complaint did nothing to cure those problems. This Court will not require Defendant to move on the same basis for a third time, and therefore dismisses the Parents' claims with prejudice.

VI.    **Conclusion**

For the foregoing reasons, this Court dismisses, with prejudice, all individual Claims brought directly by the Parents, on their own behalf. As the Complaint remains as to A.O. individually, Defendant should timely file an answer to the First Amended Complaint. An appropriate order will be docketed separately.

DATED March 27, 2025                        BY THE COURT:

_____
GAIL A. WEILHEIMER          J.

10